UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

GILJON JOHNSON,

          Plaintiff,

    v.

BENJAMIN KELLY,

          Defendant.

CASE NO. C16-0635JLR

ORDER

## I. INTRODUCTION

Before the court are two *Daubert*[1] motions by Defendant Officer Benjamin Kelly. Officer Kelly seeks to exclude testimony from Sue Peters, Plaintiff Giljon Johnson's proffered use-of-force expert (Mot. re Peters (Dkt. # 26)), and to limit the testimony from Dr. Jas Walia and Judith Parker, Mr. Johnson's proffered causation and damages experts (Mot. re Walia/Parker (Dkt. # 27)). Mr. Johnson opposes both motions. (Resp. re Peters

---

[1] *See Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993) ("*Daubert I*"); *Daubert v. Merrell Dow Pharm., Inc.*, 43 F.3d 1311 (9th Cir. 1995) ("*Daubert II*").

(Dkt. # 32); Resp. re Walia/Parker (Dkt. # 35).) The court has reviewed the parties' filings in support of and opposition to the motions, the relevant portions of the record, and the applicable law. Considering itself fully advised,[2] the court GRANTS Officer Kelly's motion to exclude Ms. Peters's testimony and GRANTS in part and DENIES in part Officer Kelly's motion to exclude Dr. Walia's and Ms. Parker's testimony, as more fully explained below.

## II.    BACKGROUND

### A.    The Underlying Claim

This case arises out of a July 19, 2014, incident in which Mr. Johnson alleges that Officer Kelly used excessive force in effectuating Mr. Johnson's arrest.[3] (*See generally* Compl. (Dkt. # 1-2).) That day, Seattle Police Department officers, including Officer Kelly, responded to a report of a residential burglary in progress. (Compl. ¶ 3.1); *Johnson*, No. 73296-0-I, at 2-3. During the investigation, Officer Kelly encountered Mr.

---

[2] Officer Kelly requests oral argument on his motion pertaining to Ms. Peters (*see* Mot. re Peters at 1) but not on his motion pertaining to Dr. Walia and Ms. Parker (*see* Mot. re Walia/Parker at 1). Mr. Johnson does not request oral argument on either motion. (*See* Resp. re Peters at 1; Resp. re Walia/Parker at 1.) The court concludes that oral argument would not be helpful in its disposition of the motions and denies Officer Kelly's request. *See* Local Rules W.D. Wash. LCR 7(b)(4).

[3] Mr. Johnson was convicted of residential burglary based on the incident, and the Washington Court of Appeals recited the facts of the case in affirming his conviction. *See State v. Johnson*, No. 73296-0-I (Wash. Ct. App. Oct. 10, 2016), slip op. at 1-7. Mr. Johnson's conviction is irrelevant to the legal issues presented in the instant motion. However, Officer Kelly relies on factual background in the Washington Court of Appeals' opinion for purposes of his motions (*see* Mot. re Peters at 2-3; Mot. re Walia/Parker at 1-2), and Mr. Johnson provides scant factual background regarding the incident in his responses (*see* Resp. re Peters at 1-2; Resp. re Walia/Parker at 1-2). Where neither party disputes the Washington Court of Appeals' characterization of the facts, the court relies on that characterization for purposes of background regarding the underlying incident.

Johnson, who appeared to be hiding in the bushes. (*Id.* ¶ 3.6); *Johnson*, No. 73296-0-I, at 4. Officer Kelly ordered Mr. Johnson to show his hands, but Mr. Johnson stood up slowly, turned around, and climbed on to the flat roof of the nearby garage. *Johnson*, No. 73296-0-I, at 4, 6. He laid down on the roof and ignored repeated commands to descend. *Id.*

Eventually, Mr. Johnson jumped down and began running through the yard. *Id.* Officer Kelly chased Mr. Johnson with his gun drawn. *Id.* at 4; (Compl. ¶ 3.9.) Mr. Johnson attempted to scale a fence to escape the yard, but he fell from the fence—in one version of events, after being pulled down by Officer Kelly—and landed near Officer Kelly. *Johnson*, No. 73296-0-I, at 4, 6; (Compl. ¶ 3.9-.12.) Mr. Johnson and Officer Kelly dispute which party instigated the ensuing scuffle. *Compare Johnson*, No. 73296-0-I, at 4-5 (describing Officer Kelly's version of events as beginning with Mr. Johnson punching Officer Kelly in the face), (*with* Compl. ¶¶ 3.11-.12 (alleging that Officer Kelly struck Mr. Johnson in the head with his firearm "[a]s Mr. Johnson fell back off the fence").) However, both parties agree that Officer Kelly struck Mr. Johnson in the head with his service pistol, a wrestle ensued, and Officer Kelly ultimately shot Mr. Johnson at least twice in the torso. *See Johnson*, No. 73296-0-I, at 5; (Compl. ¶ 3.12.)

On April 13, 2016, Mr. Johnson filed this lawsuit in King County Superior Court against the Seattle Police Department, the City of Seattle, and Officer Kelly. (Compl. at 1.) Following a subsequent removal, dismissal of claims, and dismissal of the Seattle Police Department and the City of Seattle, Mr. Johnson retains a single Section 1983 claim of excessive force against Officer Kelly. (*See* Not. of Removal (Dkt. # 1); Compl.

¶¶ 4.1-6.2 (alleging three causes of action); 6/6/16 Order (Dkt. # 11) at 3 (dismissing the second and third causes of action and the Seattle Police Department pursuant to the parties' stipulation); 1/27/17 Min. Entry (Dkt. # 25) (dismissing the City of Seattle pursuant to the parties' agreement).)

**B.    Proffered Expert Testimony[4]**

Ms. Peters intends to offer three expert opinions:  (1) Officer Kelly's contact with Mr. Johnson on the roof of the garage was inconsistent with generally accepted policies, practices, and training, and his actions created a situation more likely to require the use of force; (2) Officer Kelly used objectively unreasonable force when he struck Mr. Johnson in the head with his pistol; and (3) Officer Kelly failed to consider reasonable alternatives to using deadly force when he pursued Mr. Johnson.  (Getchell Decl. (Dkt. # 28) ¶ 3, Ex. 2 ("Peters Rep.") at 7, 9.)[5]  She bases that testimony on 29 years of experience in law enforcement, related trainings, and a detailed review of information related to this case and the State of Washington's criminal prosecution of Mr. Johnson.  (*See id.* at 2-4, Ex. A.)

Dr. Walia intends to opine on the injuries that Mr. Johnson sustained as a result of the gunshot wounds.  (Sharifi Decl. (Dkt. # 29) ¶ 3, Ex. 2 ("Walia Rep.") at 1.)  Dr. Walia

*//*

---

[4] In this section, the court provides a brief overview of the opinions that the challenged experts intend to give.  The court provides further detail relevant to its determination in the respective subsection pertaining to each putative expert.  *See infra* §§ III.B-D.

[5] Officer Kelly initially misfiled the exhibits to Cherie K. Getchell's declaration.  (*See* Dkt. # 28.)  The next day, he filed a praecipe (Dkt. # 30) with the corrected exhibits (Dkt. # 30-1), and the court considers those corrected exhibits herein.

bases his opinion on an in-person examination of Mr. Johnson on December 9, 2016, and a review of Mr. Johnson's medical records. (*See id.* at 1, 7-19.) Based on the exam and records, he diagnoses Mr. Johnson with seven ailments caused by the gunshots: (1) muscle weakness; (2) myalgia; (3) low back pain; (4) segmental and somatic dysfunction of the lumbar spine; (5) paresthesia of skin; (6) fracture of the first lumbar vertebrae; and (7) possible cauda equina syndrome. (*Id.* at 1.) Based on Mr. Johnson's range of motion, Dr. Walia also concludes that Mr. Johnson "qualifies for a 22% whole person impairment" pursuant to the American Medical Association ("AMA") Guides to the Evaluation of Permanent Impairment. (*Id.* at 3.) He opines "on a more probable than not basis with a reasonable degree of medical/chiropractic certainty" that Mr. Johnson's injuries are permanent and subject to future "exacerbations and aggravations." (*Id.* at 20.)

Ms. Parker is a putative vocational expert who offers testimony regarding Mr. Johnson's pre- and post-incident employability and earning capacity. (*See* Sharifi Decl. ¶ 5, Ex. 4 ("Parker Rep.") at 1-8.) She bases her analysis on an independent evaluation of Mr. Johnson, a review of Mr. Johnson's medical and educational records, and Dr. Walia's findings. (*Id.* at 1-3.) Ms. Parker concludes that Mr. Johnson's wage earning capacity loss is in the range of $607,061.00 to $1,381,545.00. (*Id.* at 7.) She also makes several ancillary conclusions about the reasonableness of Mr. Johnson's medical bills (*id.* at 5) and several psychosocial disorders (*id.* at 3).

//

//

Pursuant to Federal Rule of Evidence 702, Officer Kelly challenges some or all of the proffered testimony from Ms. Peters, Dr. Walia, and Ms. Parker.  (*See* Mot. re Peters; Mot. re Walia/Parker.)  Those motions are now before the court.

### III.    ANALYSIS

**A.    Legal Standard**

Rule 702 of the Federal Rules of Evidence governs the admission of expert testimony in federal court:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.  Rule 702 requires that the expert be qualified and that the "'[e]xpert testimony . . . be both relevant and reliable.'"  *Estate of Barabin v. AstenJohnson, Inc.*, 740 F.3d 457, 463 (9th Cir. 2014) (quoting *United States v. Vallejo*, 237 F.3d 1008, 1019 (9th Cir. 2001)); Fed. R. Evid. 702.  Relevancy "simply requires that '[t]he evidence . . . logically advance a material aspect of the party's case.'"  *Estate of Barabin*, 740 F.3d at 463 (quoting *Cooper v. Brown*, 510 F.3d 870, 942 (9th Cir. 2007)).

Reliability requires the court to assess "whether an expert's testimony has a 'reliable basis in the knowledge and experience of the relevant discipline.'"  *Id.* (internal

citations and alterations omitted) (quoting *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149 (1999)). The Supreme Court has suggested several factors that courts can use in determining reliability: (1) whether a theory or technique can be tested; (2) whether it has been subjected to peer review and publication; (3) the known or potential error rate of the theory or technique; and (4) whether the theory or technique enjoys general acceptance within the relevant scientific community. *See Daubert I*, 509 U.S. at 592-94. The reliability inquiry is flexible, however, and trial judges have broad latitude to focus on the considerations relevant to a particular case. *Kumho Tire*, 526 U.S. at 150.

In determining reliability, the court must rule not on the correctness of the expert's conclusions but on the soundness of the methodology, *Estate of Barabin*, 740 F.3d at 463 (citing *Primiano v. Cook*, 598 F.3d 558, 564 (9th Cir. 2010)), and the analytical connection between the data, the methodology, and the expert's conclusions, *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997); *see also Cooper*, 510 F.3d at 942 ("Rule 702 demands that expert testimony relate to scientific, technical or other specialized knowledge, which does not include unsubstantiated speculation and subjective beliefs."); Fed. R. Evid. 702 advisory committee's notes to 2000 amendments ("[T]he testimony must be the product of reliable principles and methods that are reliably applied to the facts of the case."). Moreover, "the proponent of the expert . . . has the burden of proving admissibility."[6] *Cooper*, 510 F.3d at 942 (citing *Lust v. Merrell Dow Pharms., Inc.*, 89 F.3d 594, 598 (9th Cir. 1996)).

---

[6] A pretrial hearing is not required in order to satisfy the court's gatekeeping obligations under Rule 702. *See United States v. Alatorre*, 222 F.3d 1098, 1102 (9th Cir. 2000); *see also*

**B.     Ms. Peters**

Officer Kelly challenges Ms. Peters's qualifications to render her three opinions and the reliability and relevance of those opinions.  (*See generally* Mot.)  Mr. Johnson's response violates the Local Civil Rules, falls far below the standard of practice in this court, and—most importantly—fails to meet his burden of demonstrating the reliability of Ms. Peters's testimony.  (*See generally* Resp. re Peters); *see also Cooper*, 510 F.3d at 942.  Accordingly, the court grants Officer Kelly's motion to exclude Ms. Peters's testimony.

1.     Mr. Johnson Fails to Meet His Burden

Pursuant to the Local Civil Rules, parties must support factual assertions with a citation to the record, including a pincite to the relevant page or pages.  *See* Local Rules W.D. Wash. LCR 10(e)(6) ("In all cases where the court is to review the proceedings of an administrative agency, transcripts, deposition testimony, etc., the parties shall, insofar as possible, cite the page and line of any part of the transcript or record to which their pleadings, motions[,] or other filings refer."); *see also United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) ("Judges are not like pigs, hunting for truffles buried in briefs.").  Counsel for Mr. Johnson repeatedly fails to cite to the record.  Mr. Johnson's response contains no citations to the record in the subsection on Ms. Peters's qualifications (*see*

---

*Mukhtar v. Cal. State Univ., Hayward*, 299 F.3d 1053, 1064 (9th Cir. 2002) ("A trial court not only has broad latitude in determining whether an expert's testimony is reliable, but also in deciding *how* to determine the testimony's reliability."), *overruled on other grounds by Estate of Barabin*, 740 F.3d at 463.  Here, both parties have had a full and fair opportunity to brief and present evidence relevant to Officer Kelly's *Daubert* motions, and the court therefore concludes that a hearing is unnecessary.

Resp. re Peters at 7-8) or in the subsection on the helpfulness of Ms. Peters's testimony to the trier of fact (*see id.* at 9-10).  Indeed, the entirety of the argument section contains one citation to the record.  (*See id.* at 6-10.)  That citation is to Ms. Peters's declaration and does not identify a page or paragraph.  (*See id.* at 9:4.)  The argument section contains no citations to Ms. Peters's expert report (*see id.* at 6-10), which provides the authoritative "complete statement of all opinions" that Ms. Peters will express "and the basis and reasons for them," Fed. R. Civ. P. 26(a)(2)(B)(i).

Mr. Johnson's deficient showing alone warrants concluding that Mr. Johnson has not met his burden of proving the admissibility of Ms. Peters's testimony.  *See Cooper*, 510 F.3d at 942.  However, the court has reviewed Ms. Peters's expert report and Mr. Johnson's related submissions, and those materials independently evince a lack of reliability that precludes Ms. Peters's testimony under Rule 702.

2.  Ms. Peters's Report Fails to Support Reliability

The Ninth Circuit has acknowledged that the reliability factors from *Daubert I*, such as peer review, publication, and error rate, do not apply to non-scientific expert testimony, the reliability of which depends on the expert's knowledge and experience more than the expert's methodology or theory.  *Hangarter v. Provident Life & Acc. Ins. Co.*, 373 F.3d 998, 1017 (9th Cir. 2004) (quoting *Mukhtar*, 299 F.3d at 1169); *United States v. Hankey*, 203 F.3d 1160, 1169 & n.7 (9th Cir. 2000).  However, the court cannot conclude that a non-scientific expert's proffered testimony is reliable unless the expert explains the manner in which her knowledge and experience support her conclusions.  *See Joiner*, 522 U.S. at 146 ("[N]othing in either *Daubert* or the Federal Rules of

Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert."); *Penor v. Columbia Cty.*, No. CV 08-1114-HU, 2010 WL 916211, at *3 (D. Or. Mar. 9, 2010) ("If an expert bases his testimony on experiential knowledge, he must explain how that experience lead [sic] to his conclusions and how he applied his experience to the facts in a reliable way."). "If the [expert] is relying solely or primarily on experience, then the [expert] must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." Fed. R. Evid. 702 advisory committee's note to 2000 amendments.

Ms. Peters's expert report does not tie the conclusions she makes therein to her experience in law enforcement. (*See generally* Peters Rep.) Her report reviews her experience in law enforcement (*id.* at 2, 4-5), lists the materials she reviewed (*id.* at 2-4), summarizes the facts as Ms. Peters viewed them in performing her analysis (*id.* at 5-6), and states the three opinions that Ms. Peters intends to offer (*id.* at 7-11). Ms. Peters lists those opinions without any discussion or lead-in; instead, she includes a series of bullet points under each opinion. (*Id.* at 7-11.) Most of those bullet points lack any discussion of the manner in which the bulleted fact or source supports the corresponding conclusion. (*See id.*) Instead, Ms. Peters's report and Mr. Johnson's attendant briefing leave it to the court to infer whether and how Ms. Peters's knowledge, skill, experience, training, or education support her conclusions.[7] (*Id.*); *cf. Morales v. Fry*, No. C12-2235JCC, 2014

---

[7] Ms. Peters's declaration and the deposition testimony that Mr. Johnson submitted merely reiterate Ms. Peters's experience without linking that experience to her conclusions. (*See*

WL 12042563, at *3 (W.D. Wash. Mar. 25, 2014) (admitting expert testimony pertaining to excessive force where the expert, in his report, "la[id] out the facts that form the basis of his opinions; explain[ed] why he credits the facts that he does; and explain[ed] how he reache[d] his conclusions"). Ms. Peters's say-so inadequately supports her opinions under Rule 702. *See Daubert II*, 43 F.3d at 1319; *Joiner*, 522 U.S. at 146.

Ms. Peters's unclear treatment of the underlying facts exacerbates this reliability issue. As Mr. Johnson and Ms. Peters acknowledge, some of the facts underlying the use of force are disputed and others are undisputed. (*See* Resp. re Peters at 2 ("The parties have differing factual accounts of the events giving rise to Mr. Johnson's claim."); Peters Dep. at 34:18-20 ("I believe the way I evaluated it was I took both accounts, of two different people that were different, into account."), 37:11-15.) In her report, however, Ms. Peters fails to indicate whose version of disputed events, if any, she credited. (*See, e.g.*, Peters Rep. at 6 (describing the tussle between Mr. Johnson and Officer Kelly only as "[a]n event [that] occurred near the fence of the property" that resulted in Officer Kelly shooting Mr. Johnson "two times at close contact in the abdomen/chest area").) In her deposition, Ms. Peters gave conflicting accounts of whose testimony she credited. (*Compare* Peters Dep. at 36:20-21 ("[M]y opinions were basically based on what Officer Kelly indicated he did to Mr. Johnson."), *with id.* at 37:16-17 (indicating that her opinions were "on selected topics that both [Mr. Johnson and Officer Kelly] agreed had occurred"), *and id.* at 42:21-44:3 (basing the premise that Officer Kelly called Mr.

---

Peters Decl. (Dkt. # 34) ¶¶ 4-10; Hartman Decl. ¶ 2-3, Exs. B-C.) This evidence therefore does nothing to buttress the reliability of Ms. Peters's analysis.

Johnson "tubby" on Mr. Johnson's testimony, to which Officer Kelly had never admitted), *and id.* at 57:15-58:8 (recounting and appearing to credit Mr. Johnson's version of events).)

As Ms. Peters acknowledged in her deposition, two of her opinions are based on her consideration of the totality of the circumstances. (*Id.* at 37:21-38:3; *see also* Peters Rep. at 7, 9.) Accordingly, her repeated failures to identify the version of facts on which she based her analysis and conclusions further undermines the reliability of her analysis. Based on this infirmity and Ms. Peters's failure to adequately explain how her experience in law enforcement supports her conclusions, the court concludes that her opinions are unreliable and subject to exclusion on that basis.[8] *See* Fed. R. Evid. 702; *cf.* Fed. R. Evid. 702 advisory committee's note to 2000 amendments; *Morales*, 2014 WL 12042563, at *3.

3. Ms. Peters's Additional Conclusions

Finally, Officer Kelly contends that Ms. Peters's declaration, which Mr. Johnson submitted in conjunction with his response, adds several conclusions that Ms. Peters omits from her report. (Reply re Peters (Dkt. # 38) at 5.) Specifically, Ms. Peters opines:

> 11.     Based on my training and experience, on a more probable than not basis, I find that under the totality of the circumstances Offer [sic] Kelly engaged in an excessive use of force when he employed deadly force by striking Mr. Johnson over the head with the butt of his service firearm.
> 12.     Based on my training and experience, on a more probable than not basis, I find that under the totality of the circumstances Officer Kelly engaged in an excessive use of force when he employed deadly force by electing to shoot Mr. Johnson in the abdomen twice in rapid succession at close range.

---

[8] Because the court excludes Ms. Peters's proffered opinions as unreliable, the court declines to address Ms. Peters's qualifications and the relevance of her opinions.

(Peters Decl. ¶¶ 11-12; *see also* Peters Dep. at 49:7-8, 49:19-20 (opining that the head strike to Mr. Johnson constitutes excessive force).)  Officer Kelly contends that these two opinions are also improper and seeks to prevent Ms. Peters from presenting them at trial. (*See* Reply re Peters at 1-3.)

Federal Rule of Civil Procedure 26 requires Ms. Peters's expert report to contain "a complete statement of all opinions" that she will express at trial.  *See* Fed. R. Civ. P. 26(a)(2)(B)(i).  Ms. Peters may supplement those opinions only where additional information subsequently becomes available to her or pursuant to a court order.  *See* Fed. R. Civ. P. 26(e)(1)-(2).  Mr. Johnson neither identifies subsequently revealed information nor obtained leave of the court to supplement Ms. Peters's expert report.  (*See generally* Peters Decl.); *cf.* Fed. R. Civ. P. 26(e).  Although courts permit experts to clarify or explain their expert report or qualifications via declaration, *see, e.g.*, *Clear-View Techs., Inc. v. Rasnick*, No. 13-cv-02744-BLF, 2015 WL 3453529, at *4-5 (N.D. Cal. May 29, 2015), experts may not circumvent the strictures of Rule 26 by substantively supplementing their opinions outside of the expert report, *see Bryant v. Wyeth*, No. C04-1706TSZ, 2012 WL 11924298, at *2-3 (W.D. Wash. July 19, 2012); *Asetek Danmark A/S v. CMI USA, Inc.*, No. 13-cv-00457-JST, 2014 WL 6997670, at *2 n.1 (N.D. Cal. Dec. 9, 2014) ("Rule [26] itself and the law intepreting [sic] it are clear that . . . a *complete* statement of the expert's opinions and the reasons for them be contained *in the expert report*, and that subsequently-given deposition testimony is not a substitution for adequate disclosure in the expert's original report.").

//

The first opinion that Ms. Peters includes in her declaration clarifies Opinion No. 2 from her report, in which Ms. Peters opines that Officer Kelly used "objectively unreasonable," and therefore "excessive" force "when he struck Giljon Johnson on the head with the butt of his gun." (Peters Rep. at 7; *see* Peters Decl. ¶ 11; Peters Dep. at 49:7-8, 49:19-20); *see also Bryant*, 2012 WL 11924298, at *2-3 (declining to strike a declaration that merely clarifies the expert's methodology). The court has excluded Opinion No. 2, *see supra* §§ III.B.1-2., and accordingly excludes the clarifications provided in paragraph 11 of Ms. Peters's declaration.

In contrast, the second opinion that Ms. Peters includes in her declaration differs substantively from all three opinions that Ms. Peters expresses in her expert report. (*Compare* Peters Rep. at 7-10, *with* Peters Decl. ¶ 12.) "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, . . . unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). Mr. Johnson makes no effort to demonstrate substantial justification or harmlessness, and the court accordingly excludes the opinion Ms. Peters states in paragraph 12 of her declaration.

Having excluded each of the opinions that Ms. Peters offers, the court grants Officer Kelly's motion to exclude Ms. Peters's testimony at trial.

**C.    Dr. Walia**

Officer Kelly challenges four of Dr. Walia's opinions: (1) his diagnosis of a current fracture of the first lumbar vertebrae (Mot. re Walia/Parker at 5-6); (2) his diagnosis of the possibility of cauda equina (*id.* at 6-7); (3) his conclusion that the

shooting caused the symptoms (*id.* at 7-8); and (4) his conclusion that Mr. Johnson's symptoms are permanent and require future care (*id.* at 8).  The court addresses each of those arguments in turn.[9]

### 1. Lumbar Vertebrae Fracture Diagnosis

The parties' briefing on this issue shows more common ground than disagreement. Officer Kelly correctly argues that Dr. Walia has not reliably diagnosed Mr. Johnson with a current fracture of the lumbar vertebrae.  (*See* Sharifi Decl. ¶ 4, Ex. 3 ("Walia Dep.") at 50:24-51:21.)  Although Dr. Walia characterized the first lumbar vertebrae fracture as a "diagnosis" in his expert report (Walia Rep. at 1), Dr. Walia clarifies in his deposition that he based his report on the hospital's July 19, 2014, records and diagnosis (*see* Walia Dep. at 51:7-21, 52:2-7).  Officer Kelly, Mr. Johnson, and Dr. Walia appear to agree that Dr. Walia cannot reliably diagnose Mr. Johnson with a current lumbar vertebrae fracture based solely on 2014 records.  (*See* Mot. re Walia/Parker at 6.)  The court precludes Dr. Walia from testifying regarding any current vertebral fracture at trial.

However, this conclusion does not preclude Dr. Walia from referencing the July 19, 2014, fracture diagnosis.  Because Dr. Walia's report identifies the diagnosis and contemporaneous medical records (*see* Walia Rep. at 7) as "facts or data" that he considered in forming his other opinions, Fed. R. Civ. P. 26(a)(2)(B)(ii), Dr. Walia may reference those materials in explaining the reasoning behind his analysis and conclusions.

//

---

[9] Officer Kelly does not challenge the relevance of Dr. Walia's opinions, and the court finds those opinions relevant to Mr. Johnson's burden of proving causation and damages.

## 2. Possible Cauda Equina Diagnosis

Officer Kelly argues that Dr. Walia's diagnosis of "possible" cauda equina is speculative and unreliable.[10] (Mot. re Walia/Parker at 6-7.) The court agrees. Dr. Walia admits that cauda equina is rare for him to see (Walia Dep. at 52:23-25), fails to identify a single instance in which he diagnosed cauda equina (*id.* at 53:7-11, 62:1-3), and indicates that he would have to obtain an MRI or refer a patient to a neurologist to diagnose cauda equina (*id.* at 53:12-54:8, 55:16-56:18, 61:12-13). By his own admission, therefore, Dr. Walia's is not qualified to diagnose cauda equina based on the information he reviewed; at a minimum, he would require additional testing to diagnose the syndrome. (*Id.* at 54:3-8, 63:4-22, 66:11-17.) The court therefore finds his diagnosis unreliable and precludes him from testifying regarding that syndrome.

The court also rejects Mr. Johnson's effort to circumvent this conclusion by recasting Dr. Walia's conclusions as pertaining to "bowel and bladder dysfunction." (Resp. re Walia/Parker at 11 (arguing that "even if the court were to preclude Dr. Walia from specifically referencing cauda equine [sic], Dr. Walia should not be restricted from testifying that on a more probable than not basis the bowel and bladder dysfunction experienced by Mr. [sic] correlate to the injuries [sic] lumbar spine injury Mr. Johnson sustained in this incident").) Cauda equina is the only type of bowel and bladder issue that Dr. Walia discusses in the report. (*See generally* Walia Rep.) Moreover, Dr. Walia indicated that at a minimum, he would need to review an MRI to determine the root cause

_____

[10] Cauda equina syndrome causes bowel and bladder issues and pain in the lower back and legs. (*See* Walia Dep. at 52:14-22.)

of Mr. Johnson's bladder and bowel dysfunction and weakness.  (Walia Dep. at 63:4-22, 66:11-17.)  Dr. Walia did not review such an MRI.  (*See* Walia Rep. at 7-19.)  Instead, he recommended that Mr. Johnson see a neurologist to diagnose possible bladder and bowel dysfunction.  (*Id.* at 20; Walia Dep. at 62:5-7 ("[I]f you want to figure out why is he getting bowel and bladder symptoms, okay, then you would need further studies done . . . .").)  Accordingly, the court precludes Dr. Walia from testifying regarding the cause of Mr. Johnson's bowel and bladder dysfunction.[11]

### 3.  Causation

Officer Kelly next seeks to exclude Dr. Walia's opinion that Mr. Johnson's injuries are a "direct result" of the gunshot wounds.  (Mot. re Walia/Parker at 7-8.)  He first argues that Dr. Walia's causation opinion "is premised [in part] on an assumed fracture" and should be excluded for the same reason as Dr. Walia's lumbar vertebrae fracture diagnosis should be excluded.  (*Id.* at 7.)  Although the court precluded Dr. Walia from characterizing the lumbar vertebrae fracture as his own current diagnosis of Mr. Johnson's condition, Dr. Walia is entitled to reference the July 19, 2014, fracture diagnosis as evidence he considered in evaluating Mr. Johnson and forming his opinions. *See supra* § III.C.1.; Fed. R. Evid. 702(b); Fed. R. Evid. 703 ("An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed.  If experts in the particular field would reasonably rely on those kinds of facts

---

[11] Officer Kelly does not otherwise challenge Dr. Walia's qualifications as a medical expert.  (*See* Mot. re Walia/Parker at 5-8.)  Dr. Walia's education, experience, and training demonstrate that he is otherwise qualified to testify regarding the opinions he expresses in his report.  (*See* Walia Rep. Ex. 2.)

or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted.").  Officer Kelly offers no particular reason to doubt the reliability of Dr. Walia's reference to the contemporaneously completed medical records.  (*See* Mot. re Walia/Parker at 7.)  Accordingly, the court rejects this argument.

Officer Kelly also argues that Dr. Walia failed to rely on sufficient facts and failed to consider alternative possible causes of Mr. Johnson's diagnoses.  (Mot. re Walia/Parker at 7-8.)  Dr. Walia considered Mr. Johnson's self-reported lack of a medical history or pain prior to suffering the gunshot wounds.  (Walia Rep. at 4.)  Besides the possible cauda equina, Dr. Walia explains why each injury was likely caused by the "damage that he had to his lumbar spine."  (Walia Dep. at 60:8-63:9; *see also* Walia Rep. at 20.)  He bases his conclusion on his review of Mr. Johnson's medical records (Walia Rep. at 7-19) and his expertise regarding "the way that the body is designed neurologically" (Walia Dep. at 60:23-24).  He elaborates that the absence of any superseding or intervening injuries sustained by Mr. Johnson bolsters his causation conclusion.  (Walia Dep. at 83:15-84:13); *cf. Claar v. Burlington N. R.R. Co.*, 29 F.3d 499, 502 (9th Cir. 1994) (affirming the exclusion of expert testimony regarding causation in part because the experts failed to consider other possible causes of the plaintiff's condition).  This explanation satisfies the court that Dr. Walia's causation conclusion is rooted in sufficiently rigorous methodology and therefore admissible insofar as it does not relate to diagnoses that the court has otherwise excluded.

//

//

4. <u>Permanence and Future Care</u>

Officer Kelly impugns Dr. Walia's conclusion that Mr. Johnson's conditions are permanent because Dr. Walia bases that conclusion only on the amount of time that has passed since Mr. Johnson suffered his injuries. (Mot. re Walia/Parker at 8 (citing Walia Dep. at 78:9-79:1).) In his report, Dr. Walia provides no explanation for his conclusion that all of his diagnoses will persist permanently. (*See* Walia Rep. at 1, 20 (repeatedly asserting that the symptoms are permanent without providing an explanation for that conclusion).) In his deposition, Dr. Walia clarified that he based his permanence opinion on the facts that "time has elapsed, it's been there for a long time, the nature of everything that has happened, the fractures, the surgeries, the symptoms." (Walia Dep. at 78:19-79:1.) Neither his report nor the portions of his deposition to which the parties refer the court provide any further explanation for Dr. Walia's permanence opinion.[12] (*See generally* Walia Rep.; Walia Dep.) Dr. Walia does not explain, for instance, why the muscle weakness and low back pain that Mr. Johnson suffered as of December 9, 2016, cannot eventually be remedied through rehabilitative treatment. (*See generally* Walia Rep.; Walia Dep.) He also fails to explain why, in light of his experience and expertise with the conditions he diagnosed, it is reasonable to infer that because two-and-a-half years have passed between Mr. Johnson's injury and Dr. Walia's medical examination, each of Mr. Johnson's conditions are permanent. (*See generally* Walia

//

---

[12] Mr. Johnson fails to include a single citation—factual or legal—in the subsection of his response that pertains to Dr. Walia's permanence opinion. (*See* Resp. re Walia at 11.)

Rep.; Walia Dep.)  The court therefore excludes as unreliable Dr. Walia's conclusion that Mr. Johnson's conditions are permanent.  *See Joiner*, 522 U.S. at 146.

Regarding future care, Officer Kelly focuses on Dr. Walia's conclusion that Mr. Johnson needs an MRI or consultation with a neurosurgeon to consider the possibility of cauda equina.  (Mot. re Walia/Parker at 8; *see also* Walia Dep. at 77:22-78:2 (opining that at this point, the only future care Mr. Johnson needs is "neurology to get an MRI and then go from there").)  Although the court precludes Dr. Walia from diagnosing cauda equina, *see supra* § III.C.2. & n.11, Dr. Walia provides ample foundation and explanation for his conclusion that Mr. Johnson's future care requires an MRI or a referral to a neurologist to consider that possibility (Walia Rep. at 20; Walia Dep. at 60:8-63:9, 66:11-67:25, 77:22-78:2).  Accordingly, the court denies Officer Kelly's motion regarding future care but will carefully police Dr. Walia's trial testimony to ensure it conforms with the opinions he provides in his report and clarifies in his deposition.  (*See* Walia Rep. at 20; Walia Dep. at 77:22-78:2.)

**D.    Ms. Parker**

Officer Kelly challenges four categories of opinion from Ms. Parker:  (1) opinions that rely on Dr. Walia's diagnoses (Mot. re Walia/Parker at 8-9); (2) any opinion regarding the reasonableness of Mr. Johnson's past medical bills (*id.* at 9-10); (3) references to Mr. Johnson's potential psychosocial factors—attention deficit hyperactivity disorder ("ADHD") and post-traumatic stress disorder ("PTSD") (*id.* at

//

//

10-11); and (4) the ultimate conclusion regarding Mr. Johnson's past and future earning capacity (*id.* at 11-12). The court addresses each of those arguments in turn.[13]

### 1. Opinions that Rely on Dr. Walia's Diagnoses

Ms. Parker admits that she is "not a medical person" and therefore relied on Dr. Walia's medical report and conclusion to provide foundation for her opinion. (Sharifi Decl. ¶ 6, Ex. 5 ("Parker Dep.") at 12:16-21; *see also id.* at 42:18 ("I do not diagnose."); Parker Rep. at 2-3.) For instance, Ms. Parker considered Dr. Walia's conclusion that Mr. Johnson has "possible cauda equina" in forming her vocational conclusions. (*See* Parker Rep. at 2 (listing all seven of Dr. Walia's "diagnoses," including "[p]ossible cauda equina syndrome," as factors that Ms. Parker considered in formulating her opinions); Parker Dep. at 42:3-4 (indicating that the cauda equina diagnosis "struck [her] right away"), 42:9-13 (opining that cauda equina and the resultant issues "can be significant barriers to employment"), 43:20-44:11 (explaining how cauda equina can preclude an individual from maintaining a job and therefore impacted Ms. Parker's assessment).) The court has excluded as unreliable several of Dr. Walia's "diagnoses," *see supra* § III.C., and therefore precludes Ms. Parker from relying on those diagnoses in her expert testimony.

Mr. Johnson does not dispute this reasoning, but he argues that Ms. Parker's opinion does not hinge on the challenged diagnoses. (Walia/Parker Resp. at 11-12.) Rather, Mr. Johnson asserts—yet again, without legal or factual citation—that Ms.

---

[13] Officer Kelly does not challenge Ms. Parker's qualifications as a vocational expert or the relevance of her testimony. (*See* Mot. re Walia/Parker at 8-12.) The court finds that Ms. Parker's experience and training qualify her as a vocational expert (*see* Parker Rep. Ex. A), and her opinions are directly relevant to Mr. Johnson's burden of proving damages.

Parker's entire opinion is based on Dr. Walia's conclusion that Mr. Johnson suffered a 22% whole person impairment.  (*Id.*)  Because Officer Kelly does not challenge this 22% impairment opinion, Mr. Johnson posits that "even if the court were to exclude portions of Dr. Walia's testimony as requested by defense [sic] it would not alter Ms. Parker's conclusions."  (*Id.* at 12.)  However, Ms. Parker's report and deposition testimony undermine the accuracy of Mr. Johnson's assertion.  (*See, e.g.*, Parker Rep. at 2-3 (considering all of Mr. Walia's purported "diagnoses"); Parker Dep. at 12:16-21 (indicating that Ms. Parker relied upon Dr. Walia's medical conclusions "to have some foundation" for her analysis), 42:3-14 (discussing the specific impact of Dr. Walia's cauda equina opinion on Ms. Parker's conclusions).)

Because both parties briefed this matter without the benefit of the court's ruling on Dr. Walia's testimony and the court only partially granted the relief Officer Kelly sought regarding Dr. Walia, *see supra* § III.C., the court cannot determine on the current record the extent to which its rulings regarding Dr. Walia render unreliable Ms. Parker's expert report.  Accordingly, the court orders the parties to meet and confer on this issue no later than May 11, 2017.  If the parties cannot agree regarding the impact of the court's rulings regarding Dr. Walia, the court grants Officer Kelly leave to present this issue—and no other expert-related challenge (*see* Sched. Order (Dkt. # 14) at 1)—as one of his motions in limine.[14]

---

[14] If either party believes a brief additional deposition of Ms. Parker is warranted, the court will consider a Local Civil Rule 7(i) motion to permit a deposition on this limited topic. The moving party must demonstrate the need for the deposition; identify the format, length, and

2.  Opinion Regarding the Reasonableness of Harborview's Billing Rate

The court excludes Ms. Parker's testimony that Harborview Medical Center's 2014 bills to Mr. Johnson were "reasonable and consistent with the charges of other, similar, medical providers during the[] same time period[s]." (Parker Rep. at 5.)  Ms. Parker reaches this conclusion without any explanation of her methodology or any reference to comparators. (*Id.*)  Instead, she explains that her practice requires current knowledge of the value of medical and life care goods in this region. (*Id.*; *see also* Walia/Parker Resp. at 12 (advocating almost exclusively regarding Ms. Parker's qualifications, and including only one conclusory sentence in support of relevance and reliability).)

Ms. Parker concedes that her review of the Harborview bills was more cursory than she performs in her day-to-day practice. (Parker Dep. at 59:1-25); *cf. Kumho Tire*, 526 U.S. at 152 (explaining that the objective of *Daubert I*'s gatekeeping requirement is "to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field").  Moreover, an expert relying primarily on experience must nonetheless "explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." Fed. R. Evid. 702 advisory committee's note to 2000 amendments; *see also United States v. Hermanek*, 289 F.3d 1076, 1094-95 (9th

---

date of the deposition; and explain how the deposition will not prejudice the existing scheduling order. (*See* Sched. Order.)

Cir. 2002); *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prods. Liab. Litig.*, 978 F. Supp. 2d 1053, 1067 (C.D. Cal. 2013). Besides several untestable generalities about the overlap between Ms. Parker's job and her conclusion regarding Harborview's bills, she provides no basis for the court to test or Officer Kelly to cross-examine the reliability of her analysis. (*See* Parker Rep. at 5.) Accordingly, the court excludes this portion of her expert opinion.

   3. Psychosocial Factors

   Officer Kelly next seeks to preclude Mr. Johnson from eliciting testimony from Ms. Parker regarding Mr. Johnson's IQ, ADHD, and PTSD. (Mot. re Walia/Parker at 10-11.) Contrary to Officer Kelly's characterization, however, Ms. Parker does not purport to have diagnosed Mr. Johnson with a low IQ or ADHD. (*See* Parker Rep. at 2-3; Parker Dep. at 35:17-25.) Rather, she based her analysis and report on records of Mr. Johnson's IQ test and ADHD diagnosis during his high school years. (Parker Rep. at 2-3; Parker Dep. at 35:17-35.) Like Dr. Walia's reference to the 2014 records of Mr. Johnson's fractured vertebrae, *see supra* § III.C.1., the court will permit Ms. Parker to identify the medical and educational records that she referenced in forming her opinion.[15]

---

[15] Officer Kelly also impugns the reliability and probative value of the IQ and ADHD tests, which were performed during Mr. Johnson's adolescent years. (Mot. re Walia/Parker at 10; Reply re Walia/Parker (Dkt. # 37) at 5.) Ms. Parker is qualified as a vocational expert, *see supra* n.13, and explains her rationale for crediting these arguably stale records (*see* Parker Dep. at 50:12-51:8). The conclusions that Ms. Parker draws based on those records are therefore sufficiently reliable to withstand scrutiny under Rule 702 and more appropriately explored on cross-examination. *See Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d 998, 1017 n.14 (9th Cir. 2004); *Children's Broad. Corp. v. Walt Disney Co.*, 357 F.3d 860, 865 (8th Cir. 2004).

However, Mr. Johnson does not argue that Ms. Parker is qualified to diagnose Mr. Johnson with a low IQ, ADHD, or PTSD (*see* Resp. re Walia/Parker at 12 (arguing only that it is permissible for Ms. Parker to "rely upon medical records or a patient's chart" in formulating her opinions)), and Ms. Parker confirms that she lacks the qualifications to perform such diagnoses (*see* Parker Dep. at 12:20-21 ("As I'm not a medical person, I need to have some foundation."), 15:18-16:23 (explaining Ms. Parker's expertise as a vocational rehabilitation specialist), 51:9-15 (indicating that Ms. Parker would typically defer to a neuropsychologist or a psychologist to diagnose ADHD), 52:4-56:16 (admitting that Ms. Parker does not diagnose PTSD as part of her current practice and has not done so for more than 20 years)).  Accordingly, the court will not permit her to diagnose these disorders or attribute symptoms that she observed while evaluating Mr. Johnson to medical syndromes.  (*See, e.g.*, Parker Rep. at 3 (describing Ms. Parker's observation that Mr. Johnson "exhibit[ed] PTSD behaviors" during the intake interview).)

### 4. Future Earning Capacity

Ms. Parker's principal conclusion is that Mr. Johnson's injuries have caused him a range of damages in the form of foregone future wages.  (Parker Rep. at 7.)  To calculate the low end of the range, she reasons that Mr. Johnson could have earned $9.82 per hour for the remaining 29.72 years of worklife expectancy, for a total of $607,061.00 in wages.  (*Id.*)  At the high end of the range, Ms. Parker calculates that Mr. Johnson could have earned $14.76 per hour for the remaining 45 years of worklife expectancy, for a total of $1,381,545.00 in wages.  (*Id.*)  Based on the assumption that Mr. Johnson's

//

injuries render him incapable of reentering the workforce,[16] Ms. Parker opines that this range of values represents the earning capacity that Mr. Johnson's injuries caused him to lose. (*Id.*)

Officer Kelly moves to exclude this opinion on the basis that Ms. Parker premises her conclusion on an unverified and demonstrably inaccurate understanding of the underlying facts. (Mot. re Walia/Parker at 11-12.) Ms. Parker credited Mr. Johnson's representations that (1) Subway employed him full-time from February 2014 until July 2014, (2) Papa John's employed him in a similar position from June or July 2014 until July 19, 2014—the date of the incident, and (3) Mr. Johnson has not returned to the workforce since the incident. (Parker Rep. at 2, 6; *see also* Parker Dep. at 27:22-29:18.) Mr. Johnson's Washington State employment records, which Officer Kelly obtained, are arguably consistent with Ms. Parker's assumption that Subway employed Mr. Johnson full-time from February 2014 to July 2014.[17] (*See* Sharifi Decl. ¶ 7, Ex. 6 at 2.)

---

[16] The report does not explain the basis for this assumption. (*See* Parker Rep. at 7; *see also* Resp. re Walia/Parker at 6 (asserting, without citation, that Mr. Johnson "has not been able to return to the workforce since sustaining the injuries giving rise to this claim"), 13 (positing, without citation, that Mr. Johnson "is by virtue of his pre-existing deficits relegated to heavy physically demanding work which he can no longer perform").) In her deposition, however, Ms. Parker clarified that she felt Mr. Johnson is unlikely to obtain and retain future employment because his injuries limit him to sedentary or light tasks, which tend to be skilled or semiskilled and therefore poor fits for Mr. Johnson's preexisting skillset. (Parker Dep. at 47:17-50:11.) Although Ms. Parker should have included this reasoning in her expert report, *see* Fed. R. Civ. P. 26(a)(2)(B)(i), Officer Kelly does not challenge the sufficiency of the expert report on this basis (*see* Mot. re Walia/Parker at 11-12). Accordingly, the court concludes that the deposition testimony rendered harmless Ms. Parker's omission from her report and declines to exclude the testimony on this ground. *See* Fed. R. Civ. P. 37(c)(1).

[17] A full-time employee works approximately 500 hours per quarter, but Mr. Johnson's employment records show that he worked only 432 hours at Subway during the second quarter of 2014. (Sharifi Decl. ¶ 7, Ex. 6 at 2.)

However, those records show no employment history at Papa John's and indicate that Mr. Johnson worked a total of 79 hours at Dollar Tree in the second half of 2015—approximately one year after the incident.  (*See id.*)

Although this evidence undermines multiple factual assumptions that Ms. Parker cites in her report, the court concludes that it does not render Ms. Parker's analysis so unreliable that it should be excluded.  *See* Fed. R. Civ. P. 702.  Ms. Parker based her analysis on several other, unrebutted factual premises, such as the minimum wage in Washington State and the average entry-level wage for various positions that Mr. Johnson might have obtained but for his injuries.  (Parker Rep. at 6.)  Indeed, Ms. Parker used average entry-level wages in certain positions to calculate the range of wage earning capacity loss.  (*See id.* at 6 (indicating that in Washington, helpers of pipelayers, plumbers, pipefitters, and steamfitters receive an average entry level salary of $14.76 per hour), 7 (indicating that fast food cooks in Seattle receive an average entry level salary of $9.82 per hour, and using $14.76 per hour and $9.82 per hour to calculate the range of foregone wages that Mr. Johnson incurred).)  Accordingly, the court concludes that the factually unsupported premises that Ms. Parker references in her report are properly the subjects of cross-examination, not a basis to exclude her opinion regarding foregone wages.  *See Hangarter*, 373 F.3d at 1017 n.14.

## IV.    CONCLUSION

Based on the foregoing analysis, the court GRANTS Officer Kelly's motion to exclude Ms. Peters (Dkt. # 26) and GRANTS in part and DENIES in part Officer Kelly's motion to exclude testimony from Dr. Walia and Ms. Parker (Dkt. # 27).  The court also

DIRECTS the parties to meet and confer no later than May 11, 2017, regarding the

impact of the court's rulings regarding Dr. Walia on the admissibility of Ms. Parker's

proffered testimony.

Dated this 8th day of May, 2017.

JAMES L. ROBART
United States District Judge